## KING v CIPRIANI

Ohio Appeals, 1st Dist, Hamilton Co

. Decided Jan 14, 1935

Wm. C. Meyer, Cincinnati, for plaintiff in error.

August A. Rendigs, Jr., Cincinnati, and Wm. A. Fry, Cincinnati, for defendant in error.

## OPINION

By HAMILTON, PJ.

Robert King, a child of less than seven years, brought an action through his mother to recover from Philip Cipriani for personal injuries.

At the close of the plaintiff's evidence in the case, the court instructed a verdict for the defendant and judgment was entered on the verdict. This presents a question of law as to whether or not the plaintiff had produced sufficient evidence to justify a submission of the case to the jury.

The record discloses that the defendant below, who is also defendant in error here, owned and operated a bakery near the place where the Kings resided, and in connection therewith owned, and through his agent operated a truck. On August 26, 1931, the driver of the truck of the defendant parked the truck in front of the premises occupied by Robert King, his mother, and several children.

Robert and another child were playing on the back end of the truck while it was so parked by swinging · on an iron bar across the rear end of the truck. The driver of the truck came back to the truck and spoke to the younger sister of Robert, and without any further action climbed on the truck, and without any warning started to back the truck. The other child dropped from the truck and ran to the one side, but Robert, in dropping, failed to ·clear the truck and fell to the ground, and the truck passed over the boy's leg, crushing it.

The. defense contended that the boy was a trespasser, and that the driver of the truck owed him no duty except not to wilfully and wantonly injure him. Presumably on this theory, the trial court granted the motion for an instructed verdict.

There is evidence that Robert King had often ridden on the truck with the driver· to and from the freight office. The driver knew these children, knew they were about the truck, and about the premises in question. It must also be borne in mind that the truck was parked on a public highway, where the children had a right to be. The driver knew one of the children was near the truck, for the evidence is that he stopped and talked to her. He knew that children were accustomed to play on the truck.

Under these circumstances, could it be said that the driver of the truck owed no duty to the children to use reasonable care to see that they were not injured, being aware that they were accustomed to play around the truck, and knowing that one of the children was near the truck? It must be borne in mind that the injured boy was not seven years of age at ▮▮▮▮▮▮ the time. He was not of an age when he could be a conscious trespasser. With knowledge that the children were in the habit of playing around the truck, the driver was bound to know that the children, under childish impulses, might get on the truck, or be in such proximity that to put the truck in motion might injure them. The evidence is that he did put the truck in motion, and backed it contrary to law, thus injuring the boy, as described in the case. The act might well be designated wanton negligence, but this is not necessary in such a case. There was a legal duty on the part of the driver of the truck to use ordinary care under the circumstances not to injure the children who were in the public street, and this was a question for the jury.

The Supreme Court of Ohio has more than once made a distinction between injuries caused by dangerous statical condition and those caused by a condition where dangerous active operation is carried on. In the case of **Hannan, Admr. v Ehrlich,** 102 Oh St 176, in the course of the opinion Chief Justice Marshall said, at page 187:

"A well-defined distinction runs through the cases, between injuries caused by a dangerous statical condition and premises where dangerous active operations are being carried on. A much higher degree of care is necessary in protecting children in the latter case than in the former. If the statical condition of the premises is such that the dangers are easily perceived, no liability can arise; but if the statical condition is made perilous by the active and negligent operation thereof by the owner, a different situation is presented."

In the case under consideration we have a parked truck, a statical condition. It was the active operation of ▮▮▮▮▮▮ the truck by the driver, to-wit: backing the truck, contrary to law and without proper warning, or without taking proper precaution to ascertain whether children were in a dangerous situation, and to use due care not to injure any of them.

Our conclusion is, that the trial court erred in instructing the verdict for the defendant. This conclusion under the facts is supported by: Ziehm, etv. v Vale, 98 Oh St 306; DeGroodt, Exrx., etc. v Skrbina, Admr., 111 Oh St 108; Sharp Realty Co. et v Forsha, Jr., etc., 122 Oh St 368; and Coy, etc. v Columbus, D. & M. Electric Co., 125 Oh St 283.

The judgment is reversed and the cause remanded for a new trial.

ROSS, J, concurs.

## ON REHEARING

By HAMILTON, PJ.

The first matter that counsel calls to the attention of the court in the application for rehearing is the statement in the opinion that the child playing on the rear of the truck with Robert King, the injured boy, was his sister. On examination, we find that this statement is incorrect. His sister was on the sidewalk, and another child was playing with him on the truck. However, this could make no difference in the law applicable to the case.

The second point suggested is, that the court stated in the opinion that "Robert and his sister were playing on the back end of the truck." The evidence is that a little girl and Robert were swinging on a bar across the back end of the truck. This may or may not be considered playing, but in the mind of the court it is just what the court said it was.

It is further suggested that the court states that the truck driver talked to Robert's sister, who was standing beside the truck. On this point, the record brought out by cross-examination of counsel for defendant is:

"Q. Did you see the driver when he came out the driveway?
A. Yes sir.
Q. Tell what he did?
A. He stopped there and was talking to Robert's little sister.
Q. She was smaller than Robert?
A. A little bit.
Q. Where did he stop to talk to her? Where was he when he was talking to her?
A. By the house.
Q. Then the driver came on out?
A. Yes sir.
Q. At the time he was talking to the sister where were you and Robert?
A. We were by the truck, playing.

Q. Playing by the truck?
A. Yes sir.
Q. Running around it or on it?
A. We were on it, hanging on it, swinging on it."

As bearing on some other matters suggested in the memoranda contained in the application for rehearing, we find the following, page 26 of the record. This was a continuation of the cross-examination by counsel for defendant:

"Q. State whether or not you frequently played on that truck, you and Robert, whether you played on the truck at other times?
A. Yes sir.
Q. Many times before the accident?
A. We played lots of times on the truck.
Q. Other children would play on it too?
A. Yes sir.
Q. How long had you been playing on that truck before the accident happened?
A. It was early in the morning.
Q. Early in the morning when you played on it?
A. Yes sir.
Q. Then after dinner you played on it again?
A. Yes sir.
Q. Now just tell the jury how the accident happened?
A. We were playing on the truck that morning and the man backed up in the truck and I was standing on the running board and the man went back to talk to some man and he came back out and I went home and had my dinner and while this man had gone back—when I came back to play this man had gone back and he had his truck parked there by the curb and Robert was playing on it and I came over and played with Robert and we were swinging on the truck.
Q. And then what happened?
A. This driver was talking to Robert's sister and he came over and got in the truck.
Q. Then what happened?
A. He backed back and I got off and told Robert to get off and Robert started to get off and fell.
Q. The driver backed up?
A. Yes sir.
Q. State whether or not you were hanging on the truck before he started to back?
A. Yes sir.
Q. Before he started to back?
A. Yes.

Q. Was Robert also?
A. Yes sir.
Q. State whether or not he gave any warning about that?
A. No sir.
Q. Just all of a sudden he backed up?
A. Yes sir.
Q. And you got off and Robert fell?
A. Yes sir.
Q. Then what happened to Robert?
A. The wheel run over Robert's leg."

The court is satisfied with the original opinion in the case with the correction as to the sister, and the application for a rehearing is denied.

HAMILTON, PJ, and ROSS, J, concur.